**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

SANDRA SERRANO-RIVERA,

Plaintiff,

v.                                                     CIVIL NO.  23-1231 (HRV)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## OPINION AND ORDER

### I.    Introduction

Sandra Serrano-Rivera ("Plaintiff" and/or "Ms. Serrano-Rivera") seeks review of the final administrative decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability benefits under the Social Security Act ("the Act"). (Docket No. 3). The Commissioner contends that the decision should be affirmed because it was based on substantial evidence. (Docket No. 27). After careful consideration of the record and for the reasons set forth below, I affirm the Commissioner's decision.

### II.    Legal Framework

#### A.    *Standard of Review*

Pursuant to 42 U.S.C. § 405(g), any individual may obtain review of a final decision of the Commissioner. Under said statutory provision, the Court is empowered

"to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . ." *Id.* In addition, the statute provides that if supported by substantial evidence, the findings of the Commissioner as to any fact, shall be conclusive. *Id.*

A reviewing Court must uphold the decision of the Commissioner as long as the Administrative Law Judge ("ALJ") applied the correct legal principles, and the determination is supported by substantial evidence. *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). The scope of my review is thus limited. I am tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *see also Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

To meet the evidentiary benchmark, more than a scintilla of evidence is required. *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). But the threshold for evidentiary sufficiency is not particularly high; if after looking at the existing administrative record, the reviewing court is persuaded that it contains sufficient evidence to support the Commissioner's factual determinations, the decision is bound to be upheld. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019)(cleaned up). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's decision must be reversed, however, if it was arrived at "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B.    *The Five-Step Sequential Evaluation Process***

To be eligible for social security benefits, a claimant must demonstrate that he or she is "disabled" within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The Act defines disability in pertinent part as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A). The impairment or impairments must be severe enough that "he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists [in significant numbers] in the national economy . . . ." *Id*., § 423(d)(2)*,* § 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1520(a)(1).

The Commissioner follows a five-step evaluation process to determine disability. *See Mills v. Apfel*, 244 F.3d 1, 2 (1st Cir. 2001); 20 C.F.R. § 404.1520(a). These steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id*. The Plaintiff has the burden of proof at the first four steps of the process. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

Step one considers work activity, that is, whether the plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the person is, then she is not disabled under the Act. *Id*.  Step two asks whether plaintiff has a physical or mental impairment, or a combination of impairments, that is severe and meets the Act's duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii).

Step three considers the medical severity of the plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). At this step, if plaintiff is determined to have an impairment that

meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, she is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). On the other hand, if the plaintiff is not determined to be disabled at this step, her residual functional capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e). Once the ALJ determines the RFC, the inquiry proceeds to step four. Step four compares the plaintiff's RFC to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the plaintiff can still do her past relevant work, she is not disabled. *Id.* Finally, at step five, the plaintiff's RFC is considered alongside her "age, education, and work experience to see if [she] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If [she] can make an adjustment to other work, she is not disabled; if she cannot, she is disabled. *Id.*  At this step, it is the Commissioner who has the burden "to come forward with evidence of specific jobs in the national economy that the applicant can still perform." *Freeman v. Barnhart*, 274 F.3d at 608 (*citing Arocho v. Sec'y of Health & Hman. Servs.*, 670 F.2d 374, 375 (1st Cir. 1982)).

### III.    Background and Procedural History

Ms. Serrano-Rivera applied for disability insurance benefits on April 23, 2019, alleging that her disability began on December 18, 2019. *See* Transcript of Social Security Proceedings ("Tr."), Docket No. 13. (Tr. 22-23 and 676-682). The claim was initially denied on July 19, 2019, and upon reconsideration on January 22, 2020. (Tr. 22-23 and 530-533). At Plaintiff's request, a telephone hearing was held on January 12, 2021. On

April 19, 2021, a supplemental telephone hearing was held.[1] Ms. Serrano-Rivera was represented by Olga I. Ramos-Rodriguez[2] at both hearings. (Tr. 22 and 41-84). Dr. Ariel Cintron Antommarchi, an impartial vocational expert, testified at both hearings. (Tr. 22 and 61-84). The testimonies of impartial medical experts Dr. Gilberto Munoz and Dr. Wildaliz Caro-Gonzalez, were presented during the April 19, 2021, supplemental hearing. (Tr. 22 and 41-60). On November 4, 2021, the ALJ issued her written decision concluding that Ms. Serrano-Rivera was not disabled. (Tr. 22-36).

First, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period of her alleged onset date and through her date last insured. (Step One). (Tr. 25). It was also determined that through the date last insured, Ms. Serrano-Rivera had the following severe impairments:  osteoarthritis, fibromyalgia, rheumatoid arthritis, degenerative disc disease, bronchial asthma, systemic lupus erythematosus, obesity, and depressive disorder. (Step Two). (*Id.*).

At step three of the sequential evaluation process, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).  In reaching this conclusion, the ALJ considered the relevant listings applicable to: disorders of the spine and other musculoskeletal disorders (1.15, 1.16 and 1.18); respiratory disorders and asthma (3.02 and 3.03); spinal cord disorders (11.08);

---

[1] The hearing was held by telephone due to the extraordinary circumstances presented by the Coronavirus Disease 2019 (COVID-19). Ms. Serrano-Rivera consented to both hearings being held by telephone. (*See* Tr. 22, 61-84, and 41-60).

[2] Ms. Olga I. Ramos-Rodriguez is a non-attorney representative. (*See* Tr. 22).

peripheral neuropathy (11.14); systemic lupus erythematous (14.02); and inflammatory arthritis (14.09). (Tr. 26-27). Ms. Serrano-Rivera did not meet the severity criteria for any of these listings. Further, although there is no medical listing for it, the ALJ considered Plaintiff's obesity pursuant to guidelines in SSR 19-2p and found that the functional effects of her obesity did not equal any medical listings. (Tr. 27).

Regarding the severity of Plaintiff's mental impairments, the ALJ found that they did not meet or medically equaled the criteria of listings 12.04 and 12.06. In arriving at this conclusion, the ALJ considered whether the criteria in Paragraph B requiring that the mental impairments result in one extreme limitation or two marked limitations in a broad functioning area was satisfied. [3] (*Id.*). With respect to understanding, remembering, or applying information, the ALJ found Plaintiff had a moderate limitation. (Tr. 28). For example, Ms. Serrano-Rivera reported she needed reminders to take care of her personal hygiene and take her medications. Also, following written and spoken instructions was difficult for her. (*Id.*). In interacting with others, she had a mild limitation. (*Id.*). Plaintiff reported that she was able to go shopping in stores. She also spends time with others and goes regularly to church. Ms. Serrano-Rivera gets along well with authority figures and has never been fired or laid off from a job because of problems getting along with other people. (*Id.*). Nevertheless, she avoids people and noise. (*Id.*)

_____

[3] An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (*See* Tr. 27). A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. (*Id.*).

As to concentrating, persisting, or maintaining pace, Plaintiff was found to also have a moderate limitation. (*Id*.). And as for adapting or managing oneself, her limitation was characterized as a mild. (*Id*.). In this area, Ms. Serrano-Rivera reported that she had difficulties taking care of her personal hygiene due to physical impairments and struggles with handling stress and changes in routine. (*Id*.).

All evidence considered, the ALJ concluded that Plaintiffs' mental impairments did not cause at least two "marked" limitations or one "extreme" limitation. Thus, the criteria of "paragraph B" was not satisfied.[4] (*Id*.). The ALJ also considered whether "paragraph C" criteria was satisfied and found the evidence failed to establish the relevant criteria.[5]

The ALJ concluded that Ms. Serrano-Rivera had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except that she could occasionally lift and/or carry 10 pounds. She can frequently lift and/or carry less than 10 pounds. She can sit 6 hours. She can stand and/or walk 2 hours. She can push and/or pull as much as she can lift and carry. She can frequently handle, finger, and feel with the bilateral hands. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She can never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle. She can occasionally be exposed to

---

[4] The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. (*See* Tr. 28).

[5] Under the "paragraph C" criteria, the claimant must establish that she has a serious and persistent mental disorder of two or more years with evidence of both medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of a mental disorder, and a minimal capacity to adapt to changes to their environment or to demands that are not already part of their daily life. (*Id*.).

extreme cold and vibration. She is limited to working in a moderate noise environment, such as office noise. She is able to perform simple, routine, and repetitive tasks. She is able to perform simple work-related decisions. She is able to make simple work-related decisions.

(Tr. 29). In so finding, the ALJ took into consideration all symptoms and the extent to which these symptoms can reasonably be accepted as being consistent with the objective medical evidence and other evidence, as required by 20 CFR 404.1529 and SSR 16-3p, as well as medical opinions and prior administrative medical findings, in accordance with 20 CFR 404.1520c. (*Id.*). While her medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. (*Id.* at 30). The ALJ weighed the evidence and explained in detail her reasoning regarding the disconnect between said objective medical evidence and the statements of Ms. Serrano-Rivera regarding the intensity and limiting effects of her symptoms. (Tr. 29-34).

The ALJ then concluded that Ms. Serrano-Rivera was unable to perform her past relevant work as quality control technician and general clerk. (Step Four) (Tr. 34). However, considering her age, education, work experience and RFC, the ALJ held there were jobs that existed significant numbers in the national economy that Plaintiff can perform, such as hand suture winder, addresser, and surveillance-system monitor, which are described as sedentary and unskilled. (Tr. 34-35). Hence the finding that Plaintiff was not under a disability as defined by the Act from the alleged onset date through the date last insured. (Step Five) (Tr. 36).

Still within the administrative proceedings, Ms. Serrano-Rivera requested review of the ALJ's unfavorable decision. Relief was denied by the Appeals Council on March 14, 2023 (Tr. 1-9; 673-675) at which time the Commissioner's decision became final. On May 10, 2023, Plaintiff filed her social security complaint. (Docket No. 3). The parties have submitted their respective briefs. (Docket Nos. 19 and 27).

IV.    **Analysis**

Ms. Serrano-Rivera moves the Court to reverse the Commissioner's decision on the following grounds: (1) whether the RFC determination was based on substantial evidence in the record as a whole; (2) whether the ALJ erred by failing to assess other medically diagnosed and treated conditions such as panic disorder and lupus; (3) whether it was error not to include environmental limitations in the RFC with respect to Plaintiff's severe bronchial asthma; and (4) whether it was reversible error that the ALJ's RFC findings included a limitation regarding epilepsy after previously stating that said condition was a "non-medically determinable impairment." (Docket No. 19). I will address each issue in the same order they are presented.

***Substantial Evidence - The Record as a Whole***

Plaintiff claims that the ALJ did not base her RFC determination on substantial evidence in the record as a whole because she did not take into consideration, evaluate and/or discuss, findings and progress notes of her treating psychiatrist—Dr. Gerardo Tejedor Gonzalez. Ms. Serrano-Rivera also argues that the ALJ failed to explain in her written decision why she omitted a discussion of Dr. Tejedor-Gonzalez' findings. (Docket No. 19 at 11). Further, Plaintiff contends that the ALJ failed to mention the major

depressive and panic disorders and that the ALJ was required to reconcile any contradictory statement from medical opinions she found persuasive. (*Id*. at 11-12).

The Commissioner ripostes with respect to Dr. Tejedor-Gonzalez' treatment records, that failure to enunciate does not mean failure to consider. Also, that the treatment notes of Dr. Tejedor-Gonzalez are listed in the compilation of exhibits at the end of the ALJ's decision thus creating a presumption that said evidence was in fact considered. The Commissioner further claims that any discrepancies between the diagnosis of major depressive disorder and other evidence in the record is "slight and irrelevant." (Docket No. 27 at 7). Ultimately, says the Commissioner, the ALJ found Plaintiff's major depressive disorder to be a severe impairment and Ms. Serrano-Rivera has not established that said condition added more limitations than those already assessed by the ALJ in her RFC.

With respect to the first part of this argument, I do agree that one would have expected to see a more detailed discussion of Dr. Tejedor-Gonzalez's progress notes. I disagree, however, with the notion that failure to include a more thorough outlining of the notes warrants reversal. As Plaintiff herself acknowledges, there is no requirement that an ALJ discuss every bit of evidence in the record when penning her decision. *See Conrad v. Kijakazi*, 666 F. Supp. 3d 161, 176 (D. Mass. 2003) (citing *Miller v. Astrue*, 2011 WL 2462473, at *11 (D. Mass. June 16, 2011)). There is a presumption that the ALJ has considered all the evidence before her. (*Id*.).

Here, not only did Ms. Serrano-Rivera testify during the hearing that she was treated by Dr. Tejedor-Gonzalez, but also, the progress notes are part of the exhibits the ALJ included along with her decision. (Tr. 40). The notes mention anxiety and mood

disorder under the "current diagnoses" section. The symptoms described in the notes are certainly consistent with depression. (Tr. 447-454, 919-947, 1061-1068). In the end, even assuming that the notes of Dr. Tejedor-Gonzalez were completely ignored by the ALJ, there was a determination that Plaintiff's depressive disorder was a severe impairment. And Plaintiff has not presented any persuasive argument that any such failure to properly consider the notes impacted the RFC determination or would have resulted in a more limiting RFC. *See Freeman*, 274 F.3d at 608 (Plaintiff bears the burden of production and persuasion as to her limitations); *see also Bard v. SSA Comm'r*, 763 F. Supp. 2d 270, 276 (D. Me. 2010)("[T]he claimant bears the burden of proving the limitations that factor into the Commissioner's residual functional capacity finding.").

I also agree with the Commissioner that any inconsistencies between the evidence in the record as to major depression and the consultative examiner's ("CE") use of a diagnostic code reflecting "mild" depression, is of no moment. Dr. Wildaliz Caro-Gonzalez (impartial medical expert) testified that there were inconsistencies between hospitalization[6] diagnoses and CE Dr. Jose A. Correa-Falcon's opinion. She specifically noted that records of the two hospitalizations reflected diagnoses of severe recurrent mayor depression, but the CE diagnosis was "mild" recurrent mayor depression and panic disorder. (Tr. 54).

As to this issue, it should be noted first that an ALJ is not "required to reconcile explicitly every conflicting shred of medical testimony" as long as the conflicting evidence

---

[6] Ms. Serrano-Rivera was hospitalized at San Juan Capestrano from April 3 to 8, 2019, and at Mercy Hospital of Buffalo, New York, from August 28 to September 2, 2020.

does not affect the RFC assessment. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006). Second, the RFC assessment was ultimately constructed based on a finding that the depressive disorder was a severe impairment and the ALJ carefully explained her reasoning as to the limitations such impairment imposed on Plaintiff. To the extent there was error, and I am not finding there was, it was harmless. *See Dube v. Kijakazi*, No. 23-1068, 2024 WL 372841, 2024 U.S. App. LEXIS 2448, at *2 (1st Cir. Jan. 16, 2024)(Appellant failed to show how she might have been prejudiced by the ALJ's finding of some impairments to be "severe" while consultants found the same impairments to be "non-severe.").

### *Panic Disorder and Lupus*

Next, Plaintiff argues that in assessing her RFC, the ALJ did not considered her panic disorder and lupus conditions. (Docket No. 19 at 14). This claim of error is easily disposed of. For starters, as to panic disorder, there is only a passing reference about the condition in the CE's report. Specifically, Dr. Correa-Falcon indicated in his brief report that Plaintiff "shows history [sic] . . . consistent with . . . Panic Disorder. (Tr. 917). The rule is that a medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Other than the CE's terse assertion, the record is devoid of any objective medical evidence to justify a finding that panic disorder is a medically determinable impairment suffered by the Plaintiff. *See Nicole C. v. O'Malley*, No. 23-cv-415-NT, 2024 U.S. Dist. LEXIS at *11 (D. Me. July 1, 2024)(ADHD references in the record were fairly characterized as Plaintiff's report of symptoms rather than the result of objective medical evidence.). After all, the ALJ received the testimony of impartial medical expert Dr. Caro-Gonzalez that the "panic

diagnosis is inconsistent with the medical evidence as well." (Tr. at 55). The Plaintiff has not directed me to any specific medical evidence contained in the record, and I have found none, that would substantiate a finding that panic disorder was a medically determinable impairment. It cannot be error, let alone reversible error, for an ALJ not to factor in a condition in her analysis when there is a complete dearth of objective medical evidence of its existence. *See Picard v. McMahon*, 472 F. Supp. 2d 95, 101 (D. Mass. 2007)(upholding hearing officer's finding of non-severe mental impairment due to the lack of objective medical evidence in the record.).

As to the lupus condition, Plaintiff boldly claims that "[t]he ALJ never mentioned the medically determinable condition[] of . . . lupus in her RFC assessment." (Docket No. 19 at 15). This is simply incorrect. In explaining her reasoning for her construction of the RFC in this case, the ALJ specifically mentioned SLE. (Tr. 31). Moreover, the record shows that Dr. Caro-Gonzalez testified about the existence of the condition from Plaintiffs' medical history. (Tr. 50). And in her written decision, the ALJ listed the systemic lupus erythematosus as one of Plaintiff's severe impairments. (Tr. 25). She concluded, however, that Plaintiff did not meet the criteria of Listing 14.02. (Tr. 26). Thus, the impairment did not meet or equaled the severity of impairments listed in the regulations, a finding that has not been challenged by Ms. Serrano-Rivera.

It should be noted that in addition to mentioning the SLE diagnosis as part of the RFC assessment, the ALJ specifically discussed the progress notes from Urban Family Practice (Exhibit B16F - Tr. 455-468) where the lupus diagnosis is reflected. In outlining her reasoning for the RFC ultimately determined, the ALJ referenced the most relevant of Plaintiff's symptoms such as joint pain and swelling, and other physical limitations

consistent with the lupus diagnosis and the other severe and non-severe impairments, noting where appropriate, what evidence and opinions she found to be more or less persuasive. (Tr. 29-34). Nothing more was required of the ALJ. *See Tellier v. US SSA*, Case No. 17-cv-184-PB, 2018 DHN 143, 2018 U.S. Dist. LEXIS 114012, at *8-9 (D.N.H. Jul. 10, 2018)(by concluding that SLE was a severe impairment and discussing joint pain as a symptom of the condition, the ALJ acted appropriately in her RFC assessment.)

Furthermore, as stated before, the Plaintiff bears the burden of coming forward with evidence to establish how her impairments impact her RFC. Here, she has failed to point to evidence in the record that any shortcoming of the ALJ in adequately considering and weighing her lupus condition resulted in a flawed RFC. *See Torres v. Comm'r of Soc. Sec.*, Civil No. 22-1481 (MEL), 2024 WL 1886455, 2024 U.S. Dist. LEXIS 81463, at *11 (D.P.R. Apr. 30, 2024)("While the ALJ did not explicitly discuss fibromyalgia in the RFC assessment, the ALJ did consider Plaintiff's fibromyalgia-like symptoms . . . .").

### Environmental Limitations - Asthma

Ms. Serrano-Rivera contends that the ALJ's failure to include environmental limitations for her severe bronchial asthma as part of her RFC determination was error because "an individual with severe asthma . . . would have environmental limitations and restrictions such as the need to avoid dust, fumes, gases, extremes of temperature, and other respiratory irritants." (Docket No. 19 at 16). However, the Plaintiff does not cite any authority or regulation for this assertion, nor develops the argument further. She likewise does not direct the Court to evidence in the record to support her contention.

It is correct that the ALJ found that Plaintiff's bronchial asthma condition was a severe impairment. (Tr. 25). Nevertheless, the record shows that on July 1, 2019, Ms. Serrano-Rivera submitted to a rheumatological consultative examination with Dr. Carlos A. Pantojas where she reported a history of bronchial asthma but denied respiratory symptoms such as sputum, cough, wheezing, and shortness of breath. (Tr. 1046-1053). At that time, the physical examination revealed good breath sounds and clear lungs on auscultation. (*Id.*). Likewise, the Urban Family Practice notes for the physical examination of December 10, 2020, revealed no respiratory symptoms. (Tr. 462). Lastly, during the testimony of Dr. Gilberto Munoz, an impartial medical expert, the ALJ asked about environmental limitations. Only occasional exposure to extreme cold and vibration were noted. While Plaintiff has a history of bronchial asthma, a severe impairment, the evidence on record shows that such condition was stable during the relevant period under consideration. Therefore, the ALJ was not legally required to craft a more restrictive RFC with respect to environmental limitations in the absence of medical evidence supporting the need for said limitations. *See Stanley v. Comm'r of Soc. Sec.*, No. 15-cv-02403-MO, 2017 U.S. Dist. LEXIS 44444, at *15-16 (D. Or. Mar. 23, 2017)(ALJ's failure to include environmental limitations in formulating RFC was affirmed as supported by the evidence in the record where respiratory condition was stable and under control.).

### *Limitation Regarding Epilepsy in the RFC*

As to this claim of error, Plaintiff alleges that in determining her RFC, the ALJ failed to explain why she included a limitation regarding epilepsy when previously stating this was a non-medically determinable impairment. (Docket No. 19 at 17). Indeed,

in her written decision, the ALJ concluded that epilepsy was a non-medically determinable impairment because the record was devoid of evidence treatment for that diagnosis after the alleged onset date. (Tr. 25). Plaintiff testified she suffers from epilepsy but that she could not recall the last time she had an epileptic seizure. (Tr. 47). She stated that she "get[s] them in absentia"; she only feels something in her mouth and then goes blank. (*Id.*) However, she told the ALJ that she has not felt that for a long time. (*Id.*) Also, during the rheumatological consultative examination, Plaintiff denied seizures. (Tr. 1047). The ALJ thus concluded that "in the absence of clinical findings or medical observations validating symptoms, this physical impairment cannot be medically determined." (Tr. 25).

It is not entirely clear, but to the extent that the Plaintiff is challenging the Step Two finding that epilepsy was a non-medically determinable impairment, such challenge fails. The medical evidence is insufficient to demonstrate that during the relevant period, she was under a formal diagnosis of epilepsy or that there were documented episodes of said condition. The Commissioner correctly points out that medical records from treating physicians do not show that she was being treated for epileptic seizures. Only Plaintiff's testimony at the hearing was to the effect that "the psychiatrist is treating me and the rheumatologist." (Tr. 73). Without providing a timeframe or context, Plaintiff further testified that she was prescribed Lyrica, but seemed confused about who was the Doctor that prescribed said medication or when it was discontinued because it "can be counterproductive" given the other medication that she was taking. (Tr. 74). Regardless, a diagnosis and evidence of treatment are alone insufficient to establish a severe impairment at step two. *See, e.g., Mateo-Rivera v. Comm'r of Soc. Sec.*, No. 19-1301

1  (MEL), 2020 WL 7786920, 2020 U.S. Dist. LEXIS 245224, at *17-18 (D.P.R. Dec. 30,

2  2020)(citations omitted).

3        Plaintiff also questions the logic of including an epilepsy-related noise limitation

4  in the RFC when the ALJ concluded such impairment was not medically determinable.

5  The problem is that she reads too much into the fact that impartial medical expert Dr.

6  Gilberto Muñoz recommended limitations regarding noise and strobe lights.  It is true

7  that Dr. Muñoz referred to Plaintiff's "history of epilepsy" in making such

8  recommendation. (Tr. 51).  But the Commissioner is correct that, ultimately, the noise

9  restriction was related to Plaintiff's complain that she could not stand noise due to her

10  pain and mental conditions as testified by her (Tr. 28-30, 82)[7], and not necessarily

11  connected to her history of epilepsy.  What is more, during the testimony of the VE, the

12  ALJ made sure that the jobs identified at Step Five required only a moderate level of

13  noise (Tr. 57-59), thus addressing the noise limitation that can be said to derive from

14  Plaintiff's severe and non-severe impairments. In view of the foregoing, I find that

15  Plaintiff has not been prejudiced by any inconsistency with respect to findings related to

16  epilepsy or the noise-related limitations included the in the RFC determination. *Perez v.*

17  *Astrue*, No. 11-30074-KPN, 2011 WL 6132547, 2011 U.S. Dist. LEXIS 142092, at *9-10

18

19  ───────────────────

20

21  [7] Plaintiff testified:

22        Actually, I can't stand noises. I can't stand being with people. I can't stand it. I feel like
        running away. I feel like hitting people. I can't stand that. I can't stand noises or
        someone repeating things to me. I can't stand pain. I can't stand any of that. I can't
        listen to any noise because I feel like running away. For someone to repeat things to
        me, I can't do that.

23  (Tr. 82).

(D Mass. Dec. 7, 2011)(failure to properly analyze a condition at step two was harmless where ALJ considered all impairments both severe and non-severe and there was no indication that the ALJ failed to consider the cumulative effects of said impairments.); *see also Irizarry-Martinez v. Comm'r of Soc. Security*, No. 15-2006 (BJM), 2017 WL 87018, 2017 U.S. Dist. LEXIS 4187, at *26 (D.P.R. Jan. 10, 2017)(*quoting Molina v. Astrue*, 674 F.3d 1104, 115 (9th Cir. 2021)("[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination.").

## V.   Conclusion

In view of all of the above, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 10th day of July 2024.

S/Héctor L. Ramos-Vega<br>
HÉCTOR L. RAMOS-VEGA<br>
UNITED STATES MAGISTRATE JUDGE